UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Tonya Marie Weikel                    :

    Plaintiff                         : Case No. 3:16-cv-1615

    v.                                : (Judge Richard P. Conaboy)

Nancy A. Berryhill[1]                 :
Acting Commissioner of
Social Security                       :

    Defendant                         :

_____

**Memorandum**

**I.    Background.**

    We consider here Plaintiff's appeal from an adverse decision of the Social Security Administration ("SSA") on her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI").  Plaintiff filed applications for both forms of benefit on March 19, 2013.  These claims were initially denied at the administrative level on May 15, 2013 whereupon Plaintiff filed a written request for hearing on September 13, 2013.  Plaintiff did receive a hearing before an administrative law

---

[1]  Nancy A. Berryhill is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure which addresses the substitution of parties when a public officer is replaced, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.  Fed. R. Civ. P. 25(d).  No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. Section 405(g), which states that "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commission of Social Security or any vacancy in such office."

1

judge ("ALJ") on September 30, 2014. The ALJ issued an unfavorable Notice of Decision on October 7, 2014. Plaintiff then filed an appeal with the Appeals Council. The Appeals Council ratified the ALJ's denial of benefits by decision dated June 8, 2016. The Appeals Council's denial prompted Plaintiff to file an appeal with this Court by timely complaint dated August 4, 2016.. This Court has jurisdiction over this appeal pursuant to 42 U.S.C. § 405(g).

## II. Testimony Before the ALJ.

On September 30, 2014, Plaintiff had her hearing before the ALJ. Plaintiff testified as did Michelle Georgio, a vocational expert ("VE"). Plaintiff was represented at this hearing by her attorney, Barbara Feudale.

### A. Plaintiff's Testimony.[2]

Plaintiff's testimony may be summarized as follows. She resides in Girardville, Pennsylvania with her fiancee and her daughter. She and her fiancee have been together for 13 years. Her fiancee works day shift from 8:00 a.m. to 4:00 p.m. from Monday through Friday. While her fiancee is at work, Plaintiff cares for her daughter who at the time of the hearing was three years of age.

By her own estimation, Plaintiff can lift and carry her daughter, who weighs about 35 pounds, but at times finds this difficult because of complications with her feet. Plaintiff states that 35 pounds is about the limit of what she can lift or carry.

---

[2] Record at 31-55.

She can remain on her feet for variable amounts of time depending upon whether she is experiencing a "flare-up". These flare-ups last for about half and hour.

After her alleged onset date (December 18, 2012) Plaintiff worked briefly as a telemarketer at a shopping mall. She was not able to maintain that employment because she was having difficulty hearing over the phone and she was just too nervous. She wears hearing aids but has lost the one for her right ear. She can compensate for her hearing deficit by reading lips.

Plaintiff has been affected by psoriasis for seven years. She has used Enbrel injections for her psoriasis as well as Clobetasol ointment. The psoriasis affects her feet and hands and when she experiencing exacerbations she wears gloves on her hands. She acknowledged that, although Enbrel helps her condition, she did not use it for an extended period of time at one point. She stated that the injections, which she administers herself, burn and she dislikes injecting herself.

Plaintiff last saw a dermatologist one month before her hearing. She has also taken Lithium for anxiety but stopped taking it because her research indicated that Lithium can cause psoriasis. At one point she concluded that she was on too many medications and stopped all medication but for Seroquel. Currently, she is taking Effexor, Prilosec, and Lamictal. She also continues to use Clobetasol ointment.

Plaintiff testified that she sees a Dr. Khan for mental health concerns every three months. He manages her medications. She also sees a counselor for therapy. The counselor has been seeing Plaintiff for seven years. Plaintiff feels that these counseling sessions help her. She states that, while she takes care of her young daughter all day, at times she has a bad day that makes it very hard to function in her role as a care giver. When she isn't home with her daughter, she usually goes to visit her mother who lives only two or three blocks away. She can drive to the store to get groceries and goes to her counseling sessions alone.

Plaintiff is restricted to a low protein diet because she has been diagnosed with phenylketonuria ("PKU").[3] She drinks a special fortified milk that is high on "good protein" and low on "bad protein". She eats cheese but avoids meat and eggs because of the amount and type of protein they provide.

Upon questioning by her lawyer, Plaintiff stated that when she is in a setting where there is a lot of background noise, her hearing problems are magnified and she must read lips. She experiences swelling of her hands and feet due to her psoriasis and this happens almost every day. At times her feet crack and bleed forcing her to walk on her toes. Plaintiff also stated that she

---

[3] Phenylketonuria is a rare inherited disorder that causes an amino acid called phenylalanine to build up in the body. www.mayoclinic.org. This condition is managed by restriction to a low protein diet. While the ALJ acknowledges that PKU is a "severe impairment", there is no evidence in the record of how it would restrict Plaintiff's employability.

has arthritic pain in her hands.  She does acknowledge that this pain has been alleviated since she began taking Enbrel and Humira. The pain occasionally comes and goes.

Plaintiff states that she has been diagnosed with explosive personality disorder but she acknowledges that recently her problems with anger have lessened.  She stated that her biggest mental problem is the fear that she will do something wrong.  She feels this fear all the time but being in her mother's company helps her feel more secure.  Her mother is available to help her care for her daughter when she feels the need for such assistance. The final problem the Plaintiff identified was restless leg syndrome.  She states that without the medicine she would fidget all night.  When taking the prescribed medication these symptoms improve.

### B.    Testimony by the VE.[4]

Michelle Georgio, Vocational Expert, also testified.  Ms. Georgio indicated that the records she had reviewed regarding Plaintiff's prior employment were incomplete.  The ALJ suggested that the VE question Plaintiff directly to better understand her employment background.  Plaintiff's counsel had no objection to the VE functioning in this way.  Upon questioning by the VE, Plaintiff testified that she worked as a vinyl window welder for a window manufacturer from 2004 through 2006.  In this job she welded,

---

[4] See Record at 54-61.

cleaned the glass, and installed the glass in the window frames. The entire window assembly weighed 30-40 pounds. After hearing the Plaintiff's explanation of the tasks she had performed in this job, the VE classified the job as a "production spot welder" and specified that it was "medium/unskilled" employment.

The ALJ asked the VE to respond to a hypothetical question that assumed a person of the same age, education and work experience as the Plaintiff with limitations including: (1) the capability of performing only sedentary work; (2) the inability to climb ladders or scaffolds; (3) the inability to operate levers or foot pedals; (4) no exposure to dangerous machinery or protected heights; (5) exposure to no more than moderate noise levels; (6) a work environment without fast-paced production quotas involving only simple routine tasks, simple work-related decisions, and few work place changes; and (7) a work environment that involves no more than occasional interaction with supervisors, co-workers, or the public. Assuming these restriction, the VE opined that such a hypothetical person could not perform Plaintiff's last relevant employment as a production spot welder. The VE did state, however, that the hypothetical person would be able to perform three representative jobs (sorter, sampler, or inspector) that exist in significant numbers in the national economy.

The VE stated that there would be no erosion of the hypothetical person's ability to perform these jobs even when the

ALJ imposed an additional limitation such that the hypothetical person would need to work with medical gloves covering her hands. The VE certified further that her testimony was consistent with the Dictionary of Occupational Titles and her professional experience as to how the jobs she identified are customarily performed.

**III. Mental Impairment Evidence.**

Plaintiff saw Kathleen McDonald-Gilfer, a Licensed Professional Counselor, on at least five occasions between April 4, 2013 and September 1, 2014. Ms. McDonald-Gilfer diagnosed Plaintiff with bipolar I disorder, generalized anxiety disorder, and borderline personality disorder. At various times during Ms. McDonald-Gilfer's counseling relationship with Plaintiff, she assessed GAF (Global Assessment of Function) scores ranging from 48-52. During the time Plaintiff was seeing Ms. McDonald-Gilfer she was taking Lithium but she was non-compliant with the medication at times. (R.271-233).

Plaintiff also treated with a Dr. Kahn from July of 2013 through September of 2014. During that time, Dr. Kahn saw Plaintiff on at least five occasions. Dr. Kahn diagnosed Plaintiff to be suffering from bipolar disorder NOS. Yet, his office notes of his sessions with Plaintiff indicate that she was consistently alert with cognition grossly intact, possessed of normal attention and concentration, presented with normal appearance, behavior and speech, exhibited goal-directed thought process, exhibited fair

7

insight and judgement, and did not exhibit homicidal ideation, hallucinations, delusions, psychoses, or obsessions. On three occasions (July 22, 2013, September 24, 2013, and August 26, 2014) Plaintiff's mood was dysthymic[5] and irritable. During his relationship with Plaintiff Dr. Khan assessed her GAF scores of 50-55, 60 and 60.[6] At the time of their last session, September 16, 2014, Plaintiff's mood was described as euthymic, that is normal, stable and reasonably positive. See Merriam Webster Medical Dictionary.

## IV. Physical Impairment Evidence.

Plaintiff's primary care physician, Dr. Ivor Lewis, provided substantially all of Plaintiff's care for her physical maladies. The record indicates that Plaintiff treated with Dr. Lewis from December of 2009 through at least April of 2014. Dr. Lewis' treatment of Plaintiff was primarily directed to psoriasis control and medicating Plaintiff to deal with her depression and anxiety disorders. Dr. Lewis posited that Plaintiff suffered from psoriasis as early as December 4, 2009 and consistently noted that psoriasis continued to affect Plaintiff at numerous visits over a period of more than five years. Dr. Lewis' office notes also indicate that Plaintiff's psoriasis was, at times, exacerbated and,

---

[5] Dysthymia is a mild form of depression. www.mayclinic.org.

[6] GAF scores 51 through 60 connote moderate symptoms or functional limitations. See Diagnostic & Statistical Manual of Mental Disorders-Text Revision 34 (Fourth ed. 2000).

at other times, better controlled.  He prescribed both Clobetasol ointment and Enbrel injections to combat the progression of Plaintiff's psoriasis.  His notes reflect that Plaintiff disliked using the Clobetasol ointment and preferred to use Enbrel.  The Enbrel seemed to afford Plaintiff greater relief but she stopped taking Enbrel injections for a period of time because she became pregnant and feared side effects from the medication would harm her baby.

Dr. Lewis' notes also reflect that Plaintiff's psoriasis resulted at time in a scaling plaque on her arms, legs, hands, feet, and under her breasts.  His notes also reflect on multiple occasions over the same time period that her gait was normal and that she experienced no pain, stiffness, or reduced function in her joints.

Dr. Lewis' treatment of what he diagnosed as depression and anxiety disorder consisted of medicating Plaintiff with Zoloft and Alprazolam.  On September 5, 2014, Dr. Lewis completed a "Discharge Application: Total And Permanent Disability" form to be sent to the United States Department of Education.  The form was completed to exonerate Plaintiff from the need to make continued payments on her federally funded college loans.  Dr. Lewis checked a box in the form that indicated his assessment that Plaintiff had a medically determinable physical or mental impairment that will prevent her from engaging in any substantial gainful activity for a period of

not less than 60 months.  Dr. Lewis made no reference to
Plaintiff's psoriasis on the form and described Plaintiff's
disabling impairment as bipolar and borderline personality
disorders.[7]  Dr. Lewis also indicated on the form that Plaintiff
had difficulty with social interaction that resulted in significant
impairment of her social and behavioral functioning.

**V.    ALJ Decision.**

The ALJ's decision (Doc. 9-2 at 8-27) included the following
findings of fact and conclusions of law:

1.   The claimant meets the insured status requirements
     of the Social Security Act through September 30,
     2013.

2.   The claimant has not engaged in substantial gainful
     activity since December 18, 2012, her alleged onset
     date.

3.   The claimant has the following severe impairments:
     mood disorder, bipolar disorder, adjustment
     disorder, depression, attention deficit
     hyperactivity disorder (ADHD), generalized anxiety
     disorder, anxiety, borderline personality disorder,
     bilateral hearing loss, plaque psoriasis of the
     palms and phenylketonuria ("PKU").

---

[7] As he had noted on numerous occasions in his progress notes over his five year course of
treatment of the Plaintiff, Dr. Lewis indicated on the form that she had no limitations sitting,
standing, walking, or lifting.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(b), 404.15525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant must avoid climbing on ropes, ladders, and scaffolds or crawling. The claimant must avoid pushing and pulling with the upper and lower extremities to include the operation of hand levers and pedals. The claimant must avoid exposure to hazards such as dangerous machinery or unprotected heights. The claimant must avoid noise levels above level III (moderate noise). The claimant is limited to occupations requiring no more than simple, routine tasks not performed in a fast-paced production environment involving simple work-related decisions, and in general, relatively few work place changes. The claimant could have occasional interaction with co-workers and

supervisors, but no interaction with the general public.  The claimant would require occupations with low stress, defined as occasional decision-making required.

6.  The claimant is unable to perform any of her past relevant work.

7.  The claimant was born on June 18, 1984 and was 28 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

8.  The claimant has at least a high school education and is able to communicate in English.

9.  Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 18, 2012 through the date of this decision.

**VI. Disability Determination Process.**

The Commissioner is required to use a five-step analysis

to determine whether a claimant is disabled.[8]  It is necessary for the Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work.  20 CFR §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person

---

[8]  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at the fifth step of the process when the ALJ found there are jobs that exist in the national economy that Plaintiff is able to perform. R. at 22).

**VII. Standard of Review.**

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality

test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence-- particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion. *See Cotter*, 642 F.2d at 706 ("Substantial evidence" can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

710 F.2d at 114.

This guidance makes clear it is necessary for the Secretary to analyze all evidence. If she has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are

15

rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated." *Hernandez v. Commissioner of Social Security*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported

16

by substantial evidence, shall be conclusive . . .").  "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented."  *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted).  Where the ALJ's decision is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless.  *See*, *e.g.*, *Albury v. Commissioner of Social Security*, 116 F. App'x 328, 330 (3d Cir. 2004) (not precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000) ("[O]ur primary concern has always been the ability to conduct meaningful judicial review.").  An ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

**VIII.  Discussion.**

**A. General Considerations**

At the outset of our review of whether the ALJ has met the substantial evidence standard regarding the matters at issue here, we note the Third Circuit has repeatedly emphasized the special nature of proceedings for disability benefits.  *See Dobrowolsky*, 606 F.2d at 406.  Social Security proceedings are not strictly adversarial, but rather the Social Security Administration provides

an applicant with assistance to prove his claim. *Id.* "These proceedings are extremely important to the claimants, who are in real need in most instances and who claim not charity but that which is rightfully due as provided for in Chapter 7, Subchapter II, of the Social Security Act." *Hess v. Secretary of Health, Education and Welfare*, 497 F. 2d 837, 840 (3d Cir. 1974). As such, the agency must take extra care in developing an administrative record and in explicitly weighing all evidence. *Dobrowolsky*, 606 F.2d at 406. Further, the court in *Dobrowolsky* noted "the cases demonstrate that, consistent with the legislative purpose, courts have mandated that leniency be shown in establishing the claimant's disability, and that the Secretary's responsibility to rebut it be strictly construed." *Id.*

**D.   Plaintiff's Allegations of Error.**

**Whether the ALJ Erred by Finding that Plaintiff Does Not Meet All the Criteria For Establishing Disability Pursuant to Social Security Listing 8.05 Dermatitis?**

Listing 8.05 Dermatitis includes, among numerous other conditions, psoriasis. There is no doubt that Plaintiff has been affected by psoriasis, to varying degrees of severity, for more than five years. The record is redolent with proof of this fact. However, the critical question here is whether Plaintiff has proven that her psoriasis is so severe as to be disabling. Skin disorders including psoriasis are considered extensive under Listing 8.05

18

Dermatitis if they: (1) interfere with the motion of the joints and very seriously limit the use of more than one extremity; (2) are present on the palms of both hands and very seriously limit the ability to do both fine and gross motor movements; or are present on the soles of both feet and very seriously limit the ability to ambulate. See Disability Evaluation Under Social Security 8.00 Skin Disorders ---Adult at 8.00 C1. The frequency of flare-ups and symptoms resulting from them such as pain are also important factors in determining the severity of a skin disorder. Id. At 8.00 C2 and 3. Finally, a person's history of treatment and the effect thereof are important considerations in evaluating the severity of a skin disorder. Id at 8.00 C4.

In this case no physician has opined that Plaintiff's psoriasis is disabling. Her primary treating physician, Dr. Lewis, entered numerous progress notes indicating that she was not experiencing joint pain nor was she having any difficulty standing or walking. The record is similarly devoid of any mention that Plaintiff experiences serious limitation in her ability to use her hands to perform fine or gross motor movements or that her ability to ambulate is very seriously affected as required by the listing. With respect to Plaintiff's treatment history, the record indicates that her decision to refrain from using a medication (Enbrel) that was providing a therapeutic effect affords a reasonable basis for determining that her psoriasis, though certainly problematic, is

not so severe as to preclude her from employment that provides reasonable regard for her limitations.  Plaintiff's decision to refrain from a demonstrably beneficial treatment may surely be regarded as probative that her condition may not be as severe as she contends.  Mason v. Shalala, supra, at 1068.

For a claimant to prove that his condition matches a listing he must demonstrate that it meets all of the specified medical criteria.  Sullivan v. Zebley, 493 U.S. 521, 530 (1990).  Plaintiff simply has not met this burden.  Having reviewed the medical evidence and considered the process by which the Agency evaluates the severity of a skin disorder, the Court cannot conclude that the ALJ erred by finding that Plaintiff does not meet all the criteria of Listing 8.05 Dermatitis.  Thus, Plaintiff's allegation of error on this point must be rejected.

**2.    Whether the ALJ Erred by Finding that Plaintiff was Capable of Working at the Sedentary Level with Additional Identified Restrictions?**

Plaintiff's allegation of error regarding the ALJ's determination of her RFC is based upon her various mental/emotional limitations including bipolar disorder, generalized anxiety disorder, depression, and borderline personality disorder.  While the ALJ noted that each of these conditions constitutes a "severe impairment", this is not tantamount to concluding that Plaintiff is disabled.  The test remains whether a claimant may, with

appropriate limitations in the work environment, perform work that exists in significant numbers in the national economy. The ALJ must weigh the medical evidence of record, but the final responsibility for determining a claimant's RFC rests with the Agency. Brown v. Astrue, 649 F.3d 193, 197 (3d. Cir. 2011).

The record in this case reveals that Plaintiff's treating psychiatrist, Dr, Kahn, assessed GAF scores of 50, 55, 60 and 60 on four occasions during his 14 month treatment of the Plaintiff that began in July of 2013 and ran through September of 2014. As indicated at page 7 ante, these GAF results are compatible with only "moderate" functional limitations. Beyond that, Dr. Kahn consistently noted that Plaintiff's behavior and speech were within normal limits; that her thought process was intact; that she was free from hallucinations, delusions, and obsessions; that her attention and concentration were normal; and that her insight and judgment were fair. Dr. Kahn's GAF assessments and progress notes regarding the Plaintiff constitute substantial evidence from which a reasonable reviewer could logically conclude that Plaintiff's profile was not that of a person who was incapable of functioning in a properly limited work-setting. While the Court is aware that Dr. Lewis indicated on a form that he believed Plaintiff to be disabled because of significant impairment in social and behavioral functioning, the Court's review of Dr. Lewis' treatment notes of Plaintiff's mental health problems do not corroborate his

assessment on the form.  The Third Circuit has held:  "Form reports
in which a physician's only obligation is to check a box or fill in
a blank are weak evidence at best.  As we pointed out in discussing
'residual functional capacity reports,' where these so called
'reports are unaccompanied by thorough written reports,' their
reliability is suspect..." Mason v. Shalala 994 F.2d 1058, 1065
(3d. Cir. 1993) citing Brewster v. Heckler, 786 F.2d 581, 585 (3d.
Cir.1986).  Thus, the ALJ's reliance upon Dr. Kahn's assessment was
reasonable under the circumstances.

The RFC determined by the ALJ provided that Plaintiff could
perform only simple, routine tasks, could not perform in a fast-
paced production environment, and could not adjust to frequent work
place changes.  Plaintiff was also limited to low stress
occupations with only occasional interaction with co-workers and
supervisors and no interaction with the general public.  The Court
finds that the ALJ's RFC determination adequately accounted for
both Plaintiff's physical impairments and her mental/emotional
impairments as posited by Dr. Kahn.  Accordingly, Plaintiff's
allegation of error regarding the ALJ's formulation of Plaintiff's
RFC must also be rejected.

## IX.  Conclusion.

For the reasons stated above, the Court finds that the
Agency's decision to deny benefits in this case must be affirmed
because it is supported by the requisite degree of substantial

evidence as defined in Richardson v. Perales, supra.  An Order

consistent with this conclusion will be filed contemporaneously.


BY THE COURT


                                    S/Richard P. Conaboy_____
                                    Honorable Richard P. Conaboy
                                    United States District Judge

Dated: April 21, 2017